**David L. MOSHENEK, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 42A04–0511–PC–686.**

Court of Appeals of Indiana.

July 25, 2006.

worker is injured, as opposed to injury to an innocent bystander.

Teresa D. Harper, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

David L. Moshenek appeals the trial court's order denying his petition for permission to file a belated notice of appeal.

We reverse.

*ISSUE*

Whether the trial court abused its discretion when it denied Moshenek's petition to file a belated notice of appeal.

*FACTS*

On August 30, 1988, the State charged Moshenek with one count of murder, alleging that he had knowingly killed Anthony Barrix with a knife. On December 2, 1988, the State added a request for the death penalty. On January 10, 1989, Moshenek

orally moved to enter a plea of guilty.[1] The trial court advised Moshenek of his trial rights and "that by pleading guilty" he would "give up all of those rights"; and it advised Moshenek that if found guilty at a trial, he "would have the right to appeal [his] conviction," but "by pleading guilty" he would "give up that right." (App. 12, 13). Moshenek admitted to the trial court that late one night, he had followed Barrix's vehicle, forced it off the road, fought with Barrix—who was unarmed, and stabbed Barrix more than 100 times, causing his death. The trial court accepted Moshenek's plea of guilty, found him guilty of murder, and entered judgment of conviction.

The trial court then began hearing evidence on the State's request for the death sentence. It continued to hear evidence and argument in that regard the succeeding day, January 11, 1989, and at the conclusion of that hearing, ordered a presentence investigation report (PSI). On January 31, 1989, the trial court held that the State had failed to prove beyond a reasonable doubt either of the aggravating circumstances alleged in support of imposing the death sentence. The trial court then sentenced Moshenek to "the maximum term of 60 years." (App. 51).

In April of 1989, Moshenek filed the first of two *pro se* motions for transcripts from the trial court, expressing therein his intent to file for post-conviction relief. In March of 1990, the trial court ordered the transcripts be provided, and the CCS indicates they were sent to Moshenek in 1991. On January 14, 1994, Moshenek filed a *pro se* petition for post-conviction relief[2] and asked "to have the Public Defender represent" him. (App. 309). That same day,

the trial court appointed the State Public Defender to represent him. Four deputy public defenders filed appearances on his behalf from February 15, 1994 through 1998. On November 23, 1998, current counsel—attorney Teresa Harper—filed her appearance to represent Moshenek.

On February 3, 2005, Moshenek filed his petition for permission to file a belated notice of appeal and to dismiss his petition for post-conviction relief. He alleged that

- at the plea hearing, the trial court advised him that by pleading guilty, he was giving up his right to appeal his conviction;
- at sentencing, the trial court did not advise him "of any right to appeal his conviction or sentence";
- he had never filed a direct appeal;
- he had always desired to challenge his conviction and sentence;
- he had filed a *pro se* motion for post-conviction relief;
- he had "been diligent in the pursuit of relief of any errors in his sentence";
- delay had "only been occasioned by counsels' other responsibilities"; and
- the procedure for appealing a sentence imposed after a guilty plea was not "settled" until the issuance of *Collins v. State*, 817 N.E.2d 230 (Ind. 2004).

(App. 356, 357). Attached to the petition was an affidavit from Moshenek, averring that he "did not know" that he "could appeal [his] sentence" and had "always wanted to challenge [his] sentence." (App. 359).

The trial court held a hearing on Moshenek's petition on May 19, 2005. Moshenek

---

1. According to Moshenek's affidavit, "There was no plea or sentencing agreement." (App. 359). The record does not suggest otherwise.

2. The *pro se* petition does not contain an express statement of intent to challenge the sentence.

testified that beginning in April of 1989, he had sought transcripts because he "intended to attack [his] conviction and [his] sentence in a post-conviction relief." (Tr. 4). Moshenek also testified that he "wrote" to the State Public Defender to "ask[ ] them if they would take [his] case," but was informed that he had to first file a petition for post-conviction relief. Moshenek further testified that after he filed his *pro se* petition for post-conviction relief and asked for counsel, "the public defender took [him] as a client." (Tr. 5). Thereafter, Moshenek testified, "there wasn't a point" to his "filing anything additional *pro se*," and that he "could file no more pleadings in [his] case because [he] ha[d] an attorney of record" and "anything [he] filed" would be "returned to [him]." (Tr. 5, 10). However, Moshenek testified, in exchange for the use of his typewriter, an inmate with legal writing skills had drafted a memorandum in 1996 for Moshenek's deputy public defender to use. The memorandum was introduced into evidence and included discussion of a sentencing issue. During cross-examination, Moshenek insisted that he had "always" spoken to the various deputy public defenders about his desire to challenge his sentence and had also done so with Harper, and Moshenek explained that he had never filed any document challenging his sentence in court because he had "relied on [his] lawyers." (Tr. 12, 13).

On August 23, 2005, the trial court denied Moshenek's petition, finding that Moshenek had "not been diligent in requesting permission" to file the petition pursuant to Post–Conviction Rule 2. (App. 14). The order further denied his request for dismissal of his petition for post-conviction relief.

## DECISION

■ Moshenek argues that because he established that he had been diligent in his effort to challenge the sentence imposed by the trial court, the trial court erred in finding to the contrary and, therefore, abused its discretion when it denied his petition to file a belated notice of appeal. We agree.

In *Collins v. State*, 817 N.E.2d 230, 231 (Ind.2004), our Supreme Court held that "a person is entitled to contest on direct appeal the merits of a trial court's sentencing decision where the trial court has exercised sentencing discretion, *i.e.*, where the sentence is not fixed by the plea agreement." If that person's "time for filing a direct appeal has run," he may challenge the sentence by filing "an appeal under P–C.R. 2"—a "petition for permission to file a belated notice of appeal." *Id.* at 232. Post–Conviction Rule 2 allows a petition for permission to file a belated notice of appeal where the failure to file a timely notice of appeal was not due to the fault of the defendant, and the defendant has been diligent in requesting permission to file a belated notice of appeal under the rule.

■ As the petitioner seeking to file a belated appeal, Moshenek bore the burden of proving his grounds for relief by a preponderance of the evidence. *See Land v. State*, 640 N.E.2d 106, 108 (Ind.Ct.App. 1994), *trans. denied.* Whether the petitioner has established by a preponderance of the evidence that he was without fault and was diligent in pursuing permission to file a belated notice of appeal is a matter within the trial court's discretion. The defendant must have been without fault in the delay of filing, and the determination of whether the defendant was responsible for the delay lies within the trial court's discretion. *Id.* There are no set standards defining delay or diligence, and each case must be decided on its own facts. *Id.*

Factors affecting the determination include the defendant's level of awareness of his procedural remedy, age, education, familiarity with the legal system,

whether the defendant was informed of his appellate rights, and whether he committed an act or omission which contributed to the delay.

*Id.*

We consider Moshenek's level of awareness of his procedural remedy. Moshenek testified, and the record confirms, that very shortly after his conviction and sentencing, he initiated *pro se* efforts to obtain his transcripts; the motions reference his intent to file for post-conviction relief. Moshenek testified that he had written to the State Public Defender about representation, and that he was advised that he must first file a *pro se* petition for post-conviction relief. Moshenek filed such a petition, and was then represented by either a deputy public defender or his current counsel from February of 1994 until filing the instant petition. Moshenek also testified that he had not filed any further *pro se* pleadings to show his desire to challenge the sentence because he knew that his being represented by counsel precluded consideration of such pleadings. In addition, Moshenek testified that he had consistently informed counsel of his desire to challenge his sentence. Finally, Moshenek testified that until he learned of the 2004 Supreme Court opinion specifying the procedure for appealing a sentence imposed after a guilty plea, *i.e., Collins,* he believed that any challenge would have to be pressed through the post-conviction relief process—which was in the hands of his attorneys.

As to Moshenek's age and education, information in the appendix indicates that he was 21 years old at the time of the crime, and age 22 when he pleaded guilty; and that he had attended classes at Vincennes University toward an associate degree while also working full-time at fast food restaurants. No evidence on these factors was adduced at the evidentiary hearing on Moshenek's petition, but the State suggested to the trial court that it could "take judicial notice of any matter within the case." (Tr. 23).

With respect to Moshenek's familiarity with the legal system, at sentencing, the trial court had found as a mitigating circumstance that he had no previous history of criminal activity. Moshenek has since been incarcerated for many years, but his testimony was that during that incarceration he has continuously sought a review of his sentence.

We turn to the factor of "whether the defendant was informed of his appellate rights." *Land,* 640 N.E.2d at 108. Moshenek testified, and the record confirms, that he was advised that by pleading guilty he was giving up his right to appeal his conviction. Moshenek testified, and the record confirms, that he was never advised by the trial court of his right to challenge the sentence imposed after he pleaded guilty.

Finally, we consider whether Moshenek "committed an act or omission which contributed to the delay." *Id.* At the hearing, during cross-examination, Moshenek explained that after his initial filing of the petition for post-conviction relief, he had relied on counsel to press his desire to challenge to the sentence. He further explained that he "always thought you could do a sentence under the PCR" but only recently "became aware that you can only attack your sentence through direct appeal, because of new case law that's come out on it." (Tr. 10, 11).

To the trial court, the State argued that Moshenek had not been diligent because "no single pleading in 15 plus years" ever addressed his sentence. (Tr. 29). On appeal, the State reminds us that after Harper appeared for Moshenek in November of 1998, there was "a four year time period in which Defendant did nothing to seek permission to file a belated appeal," and also asserts that "*Collins* did not create

new law, but only served to eliminate any confusion regarding the manner in which a defendant who pleads guilty to an open sentence may challenge his sentence." State's Br. at 10.

We find that *Kling v. State*, 837 N.E.2d 502 (Ind.2005), issued after the trial court's order denying Moshenek's petition, addresses these arguments. *Kling* explained that

> [p]rior to *Collins*, there was a split in authority over whether the proper procedure to challenge a sentence imposed upon an "open plea" of guilt was by means of a direct appeal or by means of collateral review under P–C.R. 1. *Collins decided the issue* by holding that the proper procedure for challenging such a sentence is to file a direct appeal or, if the time for filing a direct appeal has run, to seek permission to file a belated direct appeal under P–C.R. 2....
>
> *Now that it is clear* that a sentence imposed upon an open plea must be challenged, if at all, on direct appeal....

*Id.* at 506 (emphasis added). Further, our Supreme Court stated that "the time spent by the State Public Defender investigating a claim" did not "count against the defendant when courts consider the issue of diligence under P–C.R. 2." *Id.* at 508. In addition, our Supreme Court expressly cautioned that

> with respect to P–C.R. 2 petitions filed by persons sentenced in "open pleas," we think it appropriate for courts to keep in mind that *Collins* resolved a conflict in earlier Court of Appeals' opinions regarding whether such a defendant could include a sentencing challenge in a P–C.R. 1 petition, *see* 817 N.E.2d at 231, and *some delay may be attributable to the prior uncertainty in the law rather than the defendant's lack of diligence.*

*Id.* at 508–9 (emphasis added). Unfortunately, timing precluded the trial court's having the benefit of the guidance provided by *Kling*.

Finally, we consider the precedent of *Baysinger v. State*, 835 N.E.2d 223 (Ind. Ct.App.2005). Baysinger's affidavit and transcripts established that he was not informed that he was "entitled to contest on direct appeal" the sentence imposed after pleading guilty under an open plea on January 23, 2005. *Id.* at 226 (quoting *Collins*, 817 N.E.2d at 231). There was no evidence that Baysinger made any effort to challenge the sentence imposed until January 31, 2005, when he filed his petition for permission to file a belated notice of appeal after "learning of the proper method for challenging his sentence." *Id.* at 226. Noting that *Collins* had only been issued on November 9, 2004, we found that he had "diligently sought permission to file a belated notice of appeal" and reversed the trial court's denial of his petition.

Like Baysinger, the evidence established that Moshenek was not informed that he was "entitled to contest on direct appeal" the sentence imposed after pleading guilty under an open plea. *Id.* at 226 (quoting *Collins*, 817 N.E.2d at 231). Only four days later than Baysinger, on February 3, 2005, Moshenek filed his petition seeking permission to file a belated notice of appeal. Based upon the allegations of Moshenek's petition and the evidence presented to the trial court, we find that the trial court abused its discretion when it did not find that Moshenek had proved his grounds for relief by a preponderance of the evidence and denied his petition for permission to file a belated appeal.

Reversed.

RILEY, J., and VAIDIK, J., concur.