Victor A. SALAZAR, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 79A02–0502–PC–130.

Court of Appeals of Indiana.

Oct. 10, 2006.

Victor A. Salazar, Pendleton, IN, pro se.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, for Appellee.

**OPINION**

SULLIVAN, Judge.

Appellant, Victor Salazar, challenges the trial court's denial of his petition for permission to file a belated appeal.

We reverse.

The record reveals that on December 6, 2001, under Cause Number 79C01–0206–FC–12 ("Cause No. FC–12"), the State charged Salazar with two counts of robbery as a Class B felony. Later, on December 12, 2001, the State charged Salazar under Cause Number 79C01–0112–CF–32 ("Cause No. CF–32") with two counts of dealing in marijuana as a Class C felony; two counts of possession of marijuana as a Class D felony; one count of conspiracy to deal in marijuana as a Class C felony; two counts of dealing in cocaine as a Class A felony; one count of dealing in a schedule IV controlled substance as a Class A felony; one count of conspiracy to deal in cocaine as a Class A felony; possession of cocaine as a Class A felony; possession of cocaine as a Class B felony; possession of a schedule IV controlled substance as a Class C felony; and maintaining a common nuisance as a Class D felony. On April 29, 2002, the State added charges of intimidation as a Class C felony and pointing a firearm as a Class D felony, under Cause No. FC–12.

On February 4, 2003, Salazar agreed to plead guilty under Cause No. CF–32 to one count of dealing in cocaine and one count of dealing in a schedule IV controlled substance, both as Class B felonies. In exchange, the State agreed to dismiss the remaining charges under Cause No.

CF–32 and all of the charges under Cause No. FC–12. The trial court held a plea hearing that same day. At the plea hearing, a portion of which is included in the record before us, the trial court advised Salazar of the various rights he would be waiving by pleading guilty. Relevant to the present case is the trial court's explanation of Salazar's right to appeal:

"You also have the right to appeal. That is[,] if your case were to proceed to trial and you were convicted, you would have the right to appeal your conviction to the Indiana Court of Appeals. Do you understand you have each of these rights but by pleading guilty you are waiving or giving up your rights?" App. at 33.

Salazar replied that he understood. On February 10, 2003, the trial court accepted the plea agreement and sentenced Salazar to fifteen years on both convictions to be served consecutively. Although the trial court's judgment is dated February 10, 2003, the CCS entry regarding sentencing is dated February 13, 2003. The abstract of judgment is also dated February 13, 2003.

On November 20, 2003, Salazar filed a pro se Motion for Guilty Plea and Sentencing Hearing Transcripts. In this motion, Salazar stated that he was "in the process of preparing a Petition for Post–Conviction Relief" upon the grounds that the trial court had used improper aggravating circumstances to enhance his sentence and that his sentence was "unreasonable" in that the court had not properly considered mitigating circumstances. App. at 43–44. According to the CCS, the transcripts of the guilty plea and sentencing hearings were sent to Salazar on January 9, 2004. Thereafter, on June 24, 2004, Salazar filed a motion for a discovery order, which the trial court denied the following day.[1]

On November 9, 2004, our Supreme Court issued its opinion in *Collins v. State,* 817 N.E.2d 230, 233 (Ind.2004), wherein it held that "the proper procedure for an individual who has pled guilty in an open plea to challenge the sentence imposed is to file a direct appeal or, if the time for filing a direct appeal has run, to file an appeal under [Indiana Post–Conviction Rule] 2." In doing so, the Court resolved a conflict among panels of this court. In *Taylor v. State,* 780 N.E.2d 430 (Ind.Ct. App.2002), *trans. denied,* the court held as did the Supreme Court in *Collins*—that an individual who pleads guilty to an "open plea" must challenge his sentence by direct appeal. However, in both *Collins v. State,* 800 N.E.2d 609 (Ind.Ct.App.2003), *trans. granted, opinion vacated,* and *Gutermuth v. State,* 800 N.E.2d 592 (Ind.Ct.App.2003), *trans. granted, opinion vacated,* other panels of this court rejected the State's argument that the defendants had waived their right to challenge their sentences by failing to present their challenge in a direct appeal, and the court proceeded to address claims of sentencing error in a post-conviction proceeding. *See Collins,* 817 N.E.2d at 231.

Less than one month after our Supreme Court decided *Collins,* on December 1, 2004, Salazar filed a Verified Motion for Leave to Conduct Pre–Action Discovery and a Motion to Produce Prosecutor's File. These motions indicated that Salazar was still preparing to file a petition for post-conviction relief, and the latter motion specifically referenced Post–Conviction Rule 1(5). On December 5, 2004, the trial court ordered the State to respond to Salazar's motions before January 3, 2005. The State filed its response on January 7, 2005. The trial court entered an order dated January 7, 2005 denying Salazar's motions.

---

1. On July 6, 2004, Salazar asked the trial court clerk for a copy of the discovery order, and a copy of the CCS entry noting the denial of his motion for discovery was sent to him.

Salazar's actions up to this point all appear to have been directed towards filing a petition for post-conviction relief under Post–Conviction Rule 1. On January 12, 2005, Salazar seems to have switched strategies when he filed a "Petition to Appoint Local Counsel to Pursue Proceedings Under Ind. Post–Conviction Rule 2," in which he sought appointed counsel to pursue a belated motion to correct error or appeal. App. at 57. The trial court denied Salazar's motion on January 14, 2005. Shortly thereafter, on January 27, 2005, Salazar filed a pro se Motion for Permission to File a Belated Appeal.[2] In his motion, Salazar claimed that his failure to file a timely notice of appeal was not his fault, specifically stating as follows:

"Petitioner was never advise[d] of his right to appeal his sentence. Thus, petitioner did not know of his right to initiate an appeal of his sentence. Petitioner has never previously been convicted of a felony, and had no prior experience with the adult legal system and was unaware of Indiana appellate procedure. Petitioner has limited education, with no prior legal training in the law, and further, petitioner never completed high school.

During the petitioner's incarceration, petitioner was housed in G-cell house from 4–17–03 to 9–21–0—.[3] G-cell house offenders are not allowed physical access to the prison law library. [A]s a result, petitioner did not have physical access to the law library and was unable to research his case.

Petitioner just learned that the proper procedure for an individual who has plead[ed] guilty in an 'open plea' to challenge the sentence imposed is to file a direct appeal or, if the time for filing a direct appeal has run, to request permission to file a belated notice of appeal under Post–Conviction Rule 2. *See, Collins v. State,* 817 N.E.2d 230 (2004)." App. at 65.

On March 31, 2005, the trial court summarily denied Salazar's motion. Salazar filed a Motion to Correct Error or Modify Clerk's Record on April 4, 2005. The following day, the trial court ordered the clerk to provide Salazar with any portion of the record not previously provided to him, but otherwise denied his motion to correct error. Salazar filed a notice of appeal from the trial court's denial of his motion for permission to file a belated notice of appeal on April 25, 2005.[4]

Before turning to the merits of Salazar's claim regarding his motion for permission to file a belated notice of appeal, some procedural housecleaning is in order. Although not directly mentioned by either party, we observe that Salazar filed two separate notices of appeal in the present case. The first, filed on January 21, 2005, was an appeal from either the trial court's January 1, 2005 denial of Salazar's motion to conduct discovery and to produce the prosecutor's file or from the trial court's January 14, 2005 denial of Salazar's motion requesting the appointment of local counsel to pursue a belated notice of appeal. Indeed, following the

---

**2.** According to the CCS, three days earlier, on January 24, 2005, Salazar filed a notice of appeal. This court's docket indicates that this notice of appeal was filed on January 21, 2005.

**3.** The last part of this sentence is not reproduced in the photocopy included in the appendix.

**4.** By order of this court on July 12, 2005, the appeal corresponding to this notice of appeal was consolidated with the earlier-filed notice of appeal.

January 21 notice of appeal, Salazar filed two appellant's case summaries: the first indicated that he was appealing the trial court's January 1 ruling, and the second indicated he was appealing the trial court's January 14 ruling. Neither of these rulings appear in any way to be final judgments from which Salazar had a right to appeal. *See* Ind. Appellate Rule 2(H) (defining "final judgment"); Ind. Appellate Rule 5(A) (defining this court's jurisdiction in appeals from final judgments). Nor does it appear that Salazar had a right to bring an interlocutory appeal from these matters. *See* Ind. Appellate Rule 14(A) (describing interlocutory appeals of right). Therefore, the only proper way for Salazar to appeal anything at the time of his January 21 notice of appeal would have been to file a discretionary interlocutory appeal. *See* Ind. Appellate Rule 14(B) (describing procedures for discretionary interlocutory appeals). There is no indication before us that this is what Salazar did. Despite the fact that this court later "consolidated" Salazar's January 21 and April 25 notices of appeal under one cause number, the earlier notice of appeal is a nullity and need not be considered. To be sure, even Salazar in his "consolidated" appellant's brief makes no mention of either the trial court's rulings on his discovery motions or request for local counsel. The April 25 notice of appeal from the trial court's March 31 denial of Salazar's motion for permission to file a belated notice of appeal, however, is a permissible final appeal. *See* Ind. Post–Conviction Rule 2(1) (specifically providing for appeals from the trial court's denial of a request to file a belated notice of appeal). We therefore proceed to consider only Salazar's April 25 notice of appeal, i.e. we consider only Salazar's claims regarding the propriety of the trial court's denial of his motion seeking permission to file a belated notice of appeal.

■ Petitions for permission to file a belated notice of appeal are governed by Indiana Post–Conviction Rule 2(1), which reads in relevant part:

"Where an eligible defendant [5] convicted after a trial or plea of guilty fails to file a timely notice of appeal, a petition for permission to file a belated notice of appeal for appeal of the conviction may be filed with the trial court where:

(a) the failure to file a timely notice of appeal was not due to the fault of the defendant; and

(b) the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.

The trial court shall consider the above factors in ruling on the petition. Any hearing on the granting of a petition for permission to file the belated notice of appeal shall be conducted according to Section 5, Rule P.C. 1.

If the trial court finds grounds, it shall permit the defendant to file the belated notice of appeal, which notice of appeal shall be treated for all purposes as if filed within the prescribed period."

■ As the party seeking the belated appeal, Salazar bore the burden of proving his grounds for relief by a preponderance of the evidence. *See Moshenek v. State,* 851 N.E.2d 339, 342 (Ind.Ct.App.2006); Ind. P–C Rule 2; Ind. P–C Rule 1(5). Resolution of the question of whether a defendant has established by a preponderance of the evidence that he was without fault and was

---

5. Post–Conviction Rule 2 defines an "eligible defendant" as "a defendant who, but for the defendant's failure to do so timely, would have the right to challenge on direct appeal a conviction or sentence after a trial or plea of guilty by filing a notice of appeal, filing a motion to correct error, or pursuing an appeal." There appears to be no contention that Salazar is anything other than an eligible defendant.

diligent in pursuing permission to file a belated notice of appeal is a matter within the trial court's discretion. *Id.* Similarly, the determination of whether the defendant was responsible for the delay lies within the trial court's discretion. *Id.* There are no set standards defining delay or diligence, and each case should be decided on its own facts. *Id.*

■ Salazar argues that the failure to timely file a notice of appeal from his sentence was not his fault and that he has been diligent in requesting permission to file a belated notice of appeal. Salazar specifically claims that the trial court "misinformed" him at his guilty plea hearing that, by pleading guilty, he was giving up his right to appeal. The State argues that Salazar was solely at fault for failing to timely appeal his sentence and that Salazar does not properly support his claim that the trial court misinformed him.

The State argues that Salazar's claim is unsupported because he failed to attach a copy of his sentencing transcript to his motion for permission to file a belated notice of appeal. The State claims that the record is therefore "void of any evidence" that Salazar was not given an advisement. State's Br. at 6. The State further argues that Salazar's inclusion of two pages of his guilty plea transcript in his appendix is inappropriate because the "guilty plea transcript was not before the trial court" and therefore also not properly before this court. *Id.* at n. 3. We are unable to agree. Due to the very nature of a Post–Conviction Rule 2 hearing, and unlike a petition for post-conviction relief under Post–Conviction Rule 1, the entire record of the original trial is automatically before the trial court in a Post–Conviction Rule 2 proceeding. *Henry v. State,* 170 Ind.App. 463, 466, 353 N.E.2d 482, 484 n. 2 (1976). We therefore cannot fault Salazar for his references to the guilty plea hearing transcript in his motion for permission to file a belated appeal.

Moreover, the few pages of the transcript included in Salazar's appendix reveal that the trial court told Salazar at his guilty plea hearing that if he proceeded to trial, he would have the right to appeal his conviction, but that if he pleaded guilty, he would give up such right. We first observe that the trial court's advisement is not incorrect, in that a defendant who pleads guilty waives the right to challenge his conviction. *See Tumulty v. State,* 666 N.E.2d 394, 396 (Ind.1996). Although not incorrect, the trial court's advisement was incomplete. Those who plead guilty, such as Salazar, *do* have the right to challenge the sentence imposed to the extent that the trial court exercised its discretion in imposing the sentence. *Id.*

Salazar claims that he was never informed of his right to challenge his sentence, that portion of the record included in his appendix supports his contention, and the State points to nothing in the record which would suggest otherwise. We recognize that it has been held that a trial court is not required to inform a defendant that he has the right to appeal his sentence following a guilty plea. *See Garcia v. State,* 466 N.E.2d 33, 34 (Ind. 1984). However, in *Garcia,* the defendant was challenging his plea, and the fact that he was not informed of his right to challenge his sentence was insufficient to vacate his plea. *Id.* The fact that the trial court failed to inform the defendant of his right to appeal his sentence following a guilty plea is not irrelevant in the context of considering whether a defendant is at fault for failing to file a timely appeal. As explained by our Supreme Court in *Collins, supra:*

"The fact that the trial court at a guilty plea hearing does not advise the defendant in an open plea situation that the

defendant has the right to appeal the sentence to be imposed does not warrant an exception to the rule that sentencing claims must be raised on direct appeal. *This is because Indiana Post–Conviction Rule 2 will generally be available to an individual in this situation.*" 817 N.E.2d at 233 (emphasis supplied).

We therefore conclude that Salazar was not at fault for failing to file a timely notice of appeal. *See id.; see also Cruite v. State,* 853 N.E.2d 487, 490 (Ind.Ct.App. 2006) (holding that defendant was not at fault in his failure to challenge his sentence in a timely direct appeal where trial court failed to inform him of his appellate rights); *Baysinger v. State,* 835 N.E.2d 223, 225 (Ind.Ct.App.2005) (concluding that defendant was not at fault in failing to file timely notice of appeal where trial court's advisement regarding right to appeal following guilty plea provided insufficient guidance, and defendant asserted that counsel never informed him of appellate rights).

Furthermore, the record before us establishes that Salazar was also diligent in requesting permission to file a belated notice of appeal. The first indication that Salazar was seeking relief under Post–Conviction Rule 2—his January 12, 2005 request for local counsel—was filed a scant sixty-four days after *Collins* was decided. *Cf. Cruite,* 853 N.E.2d at 490–91 (concluding that defendant was diligent in requesting permission to file belated appeal where first indication that defendant sought to file belated appeal instead of seeking relief under Post–Conviction Rule 1 was filed on

February 14, 2005); *Moshenek,* 851 N.E.2d at 343 (concluding that defendant was diligent where he filed motion requesting permission to file belated appeal on February 3, 2005); *Baysinger,* 835 N.E.2d at 225 (concluding that defendant was diligent in requesting permission to file belated appeal where defendant averred that he learned of *Collins* holding on January 31, 2005 and sought to file belated appeal on March 1, 2005).[6]

We reject the State's suggestion that *Collins* did not break any new legal ground and that a review of pre-*Collins* case law would have informed Salazar of his right to appeal his sentence. We recognize that *Collins* came to the same conclusion that this court had reached in *Taylor, supra.* However, it cannot be denied that *Collins* settled a disagreement among various panels of this court. *See Collins,* 817 N.E.2d at 231 ("we resolve a conflict in the Court of Appeals over whether an individual who pleads guilty to an offense in an 'open plea' is entitled to challenge the sentence imposed by means of a petition of post-conviction relief.").

The court in *Moshenek* addressed a similar argument by the State and referenced the opinion of our Supreme Court in *Kling v. State,* 837 N.E.2d 502 (Ind.2005):

" '[p]rior to *Collins,* there was a split in authority over whether the proper procedure to challenge a sentence imposed upon an "open plea" of guilt was by means of a direct appeal or by means of collateral review under PC.R. 1. *Collins decided the issue* by holding that the

---

**6.** We further note that Salazar did not wait years to initiate his quest for relief from his sentence. On November 20, 2003—just over nine months from the date his sentence was imposed he filed his request for the transcripts of his guilty plea and sentencing hearings in order to seek post-conviction relief. *Cf. Moshenek,* 851 N.E.2d at 343 (defendant's first request for transcripts filed approximate-

ly three months from sentencing, pro se petition for post-conviction relief was filed approximately five years later, and request to file belated appeal was filed over sixteen years from sentencing but less than three months from date of *Collins* decision). From that point on, Salazar was persistent in seeking relief from the sentence imposed.

proper procedure for challenging such a sentence is to file a direct appeal or, if the time for filing a direct appeal has run, to seek permission to file a belated direct appeal under P–C.R. 2. . . .

*Now . . . it is clear* that a sentence imposed upon an open plea must be challenged, if at all, on direct appeal. . . .' " *Moshenek,* 851 N.E.2d at 344 (quoting *Kling,* 837 N.E.2d at 506) (emphasis in original).

Thus, prior to *Collins,* Salazar was challenging his sentence in a manner which, at that time, had not yet been completely foreclosed. Once *Collins* was decided, Salazar was relatively quick in switching from an attack based upon Post–Conviction Rule 1 to an attack based upon Post–Conviction Rule 2.

We therefore conclude that Salazar was not at fault for failing to timely file a notice of appeal, and that he was diligent in seeking relief under Post–Conviction Rule 2. The trial court erred in concluding otherwise. *See Cruite,* 853 N.E.2d at 490–91.

The judgment of the trial court is reversed and the trial court is ordered to grant the petition.

KIRSCH, C.J., and DARDEN, J., concur.